MARK HEWARD, *Individually,*      \*     IN THE CIRCUIT COURT
*And as Father and Next Friend of*
*His Minor Child*, STUDENT DOE,   \*     FOR ANNE ARUNDEL COUNTY
610 Robinson Station Road
Severna Park, Maryland 21146,     \*     CIVIL DIVISION

      *And*                \*

BELINDA HEWARD, *Individually,*  \*     Case No.: C-02-CV-22-001726
*And as Mother and Next Friend of*
*Her Minor Child*, STUDENT DOE,  \*
610 Robinson Station Road
Severna Park, Maryland 21146,     \*

      *Plaintiff(s),*          \*

         v.                \*

BOARD OF EDUCATION OF     \*
ANNE ARUNDEL COUNTY,
d/b/a ANNE ARUNDEL COUNTY   \*
PUBLIC SCHOOLS,
2644 Riva Road             \*
Annapolis, Maryland 21401,
                      \*
     *Serve On: Resident Agent*
     Joanna Bache Tobin, Board President\*
     ANNE ARUNDEL COUNTY PUBLIC SCHOOLS
     2644 Riva Road          \*
     Annapolis, Maryland 21041
                      \*
      *And*                \*
                      \*
PRINCIPAL PATRICK BATHRAS
60 Robinson Road          \*
Severna Park, Maryland 21146
                      \*
      *And*                \*
                      \*
ASSISTANT PRINCIPAL PAIGE CHANG
60 Robinson Road          \*
Severna Park, Maryland 21146
                      \*
      *And*                \*

**EXHIBIT 1C**

REGIONAL ASSISTANT SUPERINTENDENT
JANINE ROBINSON                                  *
1121 Duvall Highway
Pasadena, Maryland 21122                         *

    *Defendant(s)*.                              *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## AMENDED COMPLAINT & REQUEST FOR JURY TRIAL

Plaintiffs Mark Heward and Belinda Heward, as parents and next friends of Student Doe, a minor, by and through their undersigned counsel, David C.M. Ledyard and Ledyard Law LLC, and Cole J. Sullivan and The Valente Law Group, file this Complaint, and states as follows:

## INTRODUCTION

1.      This First Amendment, defamation, and negligence case arises out of the Anne Arundel County School District's suspension of a freshman high school student from school as punishment for a single post on Snapchat (which was created, posted, and shared outside of school grounds, and on the student's own time during non-school hours using the student's personal non-school issued cellular telephone) that school officials wrongly believed was "offensive" and "biased."  Plaintiff seeks injunctive relief and damages.

## PARTIES

2.      Plaintiff Mark Heward is a citizen of Anne Arundel County, Maryland.

3.      Plaintiff Mark Heward is the father of Student Doe.

4.      Plaintiff Belinda Heward is a citizen of Anne Arundel County, Maryland.

5.      Plaintiff Belinda Heward is the mother of Student Doe.

6.      At all times relevant to this complaint, Student Doe was a student at Severna Park High School (the "School"), a public school owned and operated by the Board of Education of Anne Arundel County, d/b/a Anne Arundel County Public Schools ("Defendant Board").

7.      Defendant Board is a county school system board of education created pursuant to Title 3 of the Education Article of the Maryland Code and controls the Anne Arundel County Public School System (hereinafter, the "School System").  Defendant Board is the legal entity responsible for all actions of the School System and the School System's employees and agents, including all individual and entity Defendants.

8.    Defendant Patrick Bathras ("Defendant Bathras") is a citizen of Anne Arundel County, Maryland.  At all times relevant herein, Defendant Bathras was a Maryland citizen and was a principal hired by the School System assigned to work at the School.

9.    Defendant Paige Chang ("Defendant Chang") is a citizen of Anne Arundel County, Maryland.  At all times relevant herein, Defendant Chang was a Maryland citizen and was an assistant principal hired by the School System assigned to work at the School.

10.    Defendant Janine Robinson ("Defendant Robinson") is a citizen of Anne Arundel County, Maryland.  At all times relevant herein, Defendant Robinson was a Maryland citizen and was a regional assistant superintendent hired by the School System assigned to work with the School.

11.    Defendants Board, Bathras, Chang, and Robinson, and their agents, servants, and/or employees are singularly referred to as "Board Defendant" or collectively referred to as "Board Defendants."

12.    Defendants Bathras, Chang, and Robinson are also collectively referred to as "Individual Defendants."

### JURISDICTION AND VENUE

13.    This Court has personal jurisdiction over the Board Defendants pursuant to Maryland Code, Courts & Judicial Proceedings, § 6-103, because the cause of action arose in Maryland.

14.    This Court has subject matter jurisdiction over the Board Defendants pursuant to Maryland Code, Courts & Judicial Proceedings, § 4-401(1), because the amount in controversy is greater than thirty-thousand dollars ($30,000.00).

15.    Venue lies with this Court pursuant to (i) Maryland Code, Courts & Judicial Proceedings, § 6-201(a), because Board Defendants reside, carry on a regular business, habitually engage in a vocation, or maintain their principal offices in this County; (ii) Maryland Code, Courts & Judicial Proceedings, § 6-201(b), because there is more than one Defendant and there is no single venue applicable to all Board Defendants, so all may be sued in a county in which any one of them could be sued; and § 6-202(8), because this is a tort action based in negligence arising in this County.

16.    Pursuant to Maryland Code Annotated, Courts & Judicial Proceedings, §5-518(d),

3

the Board is joined not just as a Defendant but as a necessary party.

## FACTUAL BACKGROUND

17.     Pursuant to Maryland Rule 2-303(c), Plaintiff(s) set(s) forth multiple counts and prayers for relief regardless of consistency.

### *Background*

18.     At all times relevant, Student Doe was a thirteen-year-old student in the School System, specifically, at Severna Park High School ("Severna Park", "SPHS", or the "School") in Anne Arundel County, Maryland.

19.     Student Doe was a ninth-grade student at Severna Park High School.

20.     Student Doe lives with her parents in Severna Park, Maryland.

21.     Student Doe is originally from Great Britain and recently became a student in the United States of America, specifically at Severna Park High School.

22.     Defendant Chang (Assistant Principal at Severna Park High School), Defendant Bathras (Principal at Severna Park High School), and Defendant Robinson (Regional Assistant Superintendent for Glen Burnie and Severna Park) are all employees, agents, and/or servants of Defendant Board.

### *School Spirit*

23.     On October 15, 2021, the Severna Park varsity football team (the "Falcons") played the Broadneck High School (Annapolis) varsity football team (the "Bruins") (the "Football Game").

24.     At all times relevant, Severna Park has school colors of gold and blue.

25.     As depicted in the photograph below, Severna Park's version of gold is matte instead of shiny:





26.     The school spirit theme for the Football Game related to the military.

27.     As such, Belinda Heward purchased gold face paint for Student Doe and her friends to use at the Football Game.

28.     Below is the shelf with gold-themed color products, including the face paint Belinda Heward purchased for Student Doe and her friends (circled in red):

5



29.    Below is an actual picture of the packaging for the face paint product used by Student Doe:



30.    Student Doe attended the Football Game with her friends, and they all wore face paint to reflect the theme.

31.    Below is an actual photo of Student Doe and her friends at the Football Game (redactions to protect the privacy of minor children):



32.    Student Doe previously used gold face paint for school events such Spirit Day and

7

a Pep Rally without issue. Many other students at the School also used gold face paint at the School without issue.

33.    As seen in the photograph, Student Doe attended the Football Game with several friends from school which were members of minority groups.

34.    The use of face paint is not unique to Severna Park or the Football Game, face painting, body painting, and costuming wearing are common at American sporting events – particularly American Football.

35.    For instance, fans of the Las Vegas Raiders professional American Football team are common seen dressed as below:



36.    Some fans are famous for their attire, including face paint, at sporting events:



37.     Sometimes paint is used in combination with clothing to create a uniform effect in the crowd, such as a "White Out" or "Black Out".



JOE HERMITT, The Patriot-News





10







### *Anne Arundel County Public School Student Handbook*

38.      The Anne Arundel County Public School Student Handbook (the "Handbook") states, on Page 29, bias behavior as: "Bullying and cyberbullying, harassment and intimidation, hazing, and bias behavior and language- **intentional conduct**, including verbal, physical, graphic or written conduct or an **intentional** electronic communication that creates a hostile education environment by substantially interfering with a student's educational benefits, opportunities, or performance, or with a student's physical or psychological wellbeing."[1] (**emphasis added**)

39.      Upon information and belief, the Handbook was approved or ratified by Defendant Board prior to the events complained of.

### *Student Doe's Snapchat Post*

40.      On or about Saturday, October 16, 2021, the day after the Football Game, Student Doe was getting ready to host a sleepover with her friends at her house.

41.      Student Doe was at home.

42.      Student Doe was not at school or near the school premises.

43.      Student Doe was not participating in a school activity.

44.      This was not during school hours.

45.      Student Doe decided to make a private "FaceTime" phone call to one of her friends

---

[1] P. 29, **Emphasis Added** – The Student Handbook for Anne Arundel County Public Schools can be found at https://www.aacps.org/studenthandbook

while they were getting ready.

46.    During the FaceTime call, Student Doe decided to use the remaining gold face paint to paint a skeleton on her face in the spirit of the upcoming Halloween holiday.

47.    Unfortunately, before she finished, Student Doe messed up the skeleton.

48.    Student Doe then decided just to cover her face and neck with the remaining gold face paint.

49.    Before Student Doe could finish painting her face and neck gold, while still on FaceTime, Student Doe took a 'silly selfie' picture and decided to send it to a private, closed group of immediate friends (approximately eight (8) close friends, many of who are of minority groups and were attending a sleepover at Student Doe's house later that night) (the "Snapchat Group") using the Snapchat app, without any amplifying commentary or remarks (the "School Spirit Snap").  In fact, there was no wording or remarks put on the photo.

50.    During the School Spirit Snap, Student Doe's face was covered with gold face paint, and she held up the "rock out" sign with her free hand.

51.    The "rock out" sign is called the "Sign of the Horns" (credit Wikipedia), which is commonly used in Heavy Metal culture, but traces its roots to ancient religions or past civilizations to ward off demons or evil spirits. Below is the depiction from Wikipedia:



52.    In American Football, the sign is also used for "Hook 'Em Horns" for the University of Texas:



53.     By way of background, Student Doe's friend is a member of a minority group and was live on FaceTime with Student Doe while she was applying the gold face paint.

54.     The School Spirit Snap was created using Student Doe's own personal telephone – not property belonging to Defendant Board.

55.     The School Spirit Snap did not mention Defendant Board, Student Doe's School, any specific person or group of persons, and did not feature any School logo or School paraphernalia.

56.     The School Spirit Snap was shared only with mutual Snapchat friends in a private group chat, the Snapchat Group.   The Snapchat Group and the School Spirit Snap was not accessible to the general public.

57.     Snap Chat deletes "Snaps" (which are the photos taken on the Snapchat platform) from the platform after twenty-four (24) hours, so the School Spirit Snap disappeared from Snapchat the next day, which was Sunday, October 17, 2021, a non-school day.

58.     Student Doe did not access or share the School Spirit Snap at school.

59.     Student Doe used no school resources to create the School Spirit Snap.

60.     Student Doe used no school time to create the School Spirit Snap.

61.     At some point during the weekend, a fellow student from the private Snapchat Group took a screenshot of the School Spirit Snap and shared it with other students outside of Student Doe's friend group, without Student Doe's knowledge, permission, intent and/or consent.

62.     Student Doe hosted a sleepover later that night, Saturday October 16, 2021, with most of the members from the Snapchat Group, without incident. The School Spirit Snap was

14

mentioned during the sleepover, but not one attendee indicated that they were offended or bothered in any way by the School Spirit Snap. Again, by way of background, several of the sleepover attendees were members of minority groups.

63.    Student Doe hosted her friends at her house on Sunday into the early evening. These friends also included members of minority groups. None of these friends indicated offense at the School Spirit Snap.

### *Student Doe's Suspension from School*

64.    On or about Monday, October 18, 2021, Student Doe attended her first period class without incident. The School Spirit Snap was not mentioned or shown during the class.

65.    On or about Monday, October 18, 2021, the School Spirit Snap was brought to the attention of school officials who worked for Defendant Board.

66.    The student who brought the School Spirit Snap to the attention of Defendant Board was not from the immediate, private Snapchat Group.

67.    The student who brought the School Spirit Snap to the attention of the Defendant Board falsely claimed the School Spirit Snap was a picture of Student Doe in "brown face" and/or "black face".

68.    This is the quintessential "black face" photograph:



69.    An investigation was opened by Defendant Board into the School Spirit Snap and Student Doe's behavior.

70.    Agents for Defendant Board then pulled Student Doe out of her second period (her "homeroom") class to question her about the contents of her School Spirit Snap.  At this time, the School Spirit Snap was not mentioned by any student, faculty, or staff, nor was it shown to anyone at school. The School Spirit Snap was not brought up in any classrooms or discussed in any fashion

15

prior to Student Doe being removed from class. Student Doe had no idea why she was pulled out of class.

71.     Student Doe told Defendant Board that the School Spirit Snap was taken with **gold** face paint and had absolutely no intention to offend or harm anyone.

72.     As previously mentioned, the color gold is Severna Park High School's School Color (in addition to blue and white).

73.     Gold is not the color of any race or ethnicity of any population in the world.

74.     Student Doe denied – and could not have exhibited – any racial bias or intent behind the gold face paint or photograph.

75.     The friend Student Doe was Facetiming with at the time the gold face paint was applied confirmed the lack of any racial bias or intent on the part of Student Doe and that Student Doe and her were just messing around with their makeup.

76.     Nevertheless, Student Doe was irrationally and negligently suspended from Severna Park High School for displaying "intentional" bias – despite no evidence supporting the suspension or finding of "intentional" bias.

77.     The only basis for the suspension was the unsupported accusations from someone outside Student Doe's friend group, who came into possession of the School Spirit Snap without Student Doe's permission, consent, or knowledge. The School Spirit Snap was intended to disappear before School started on Monday, October 18, 2021.

78.     At the time of Student Doe's improper suspension from school for painting her face **gold**, Defendant Board had no plan in place to (a) protect Student Doe from cyberbullying, in-person bullying, and excommunication from student groups, and (b) ensure her re-entry and reintegration into the student body.

79.     Defendant Board failed to clarify that the School Spirit Snap did not have a racial motive to any student(s) who could have improperly inferred a racial motive behind the School Spirit Snap.

80.     Defendant Board failed to clarify that the color **gold** was used with no racial motive.

81.     Defendant Board "rubber stamped" the complaint against Student Doe without regard to (a) Student Doe's safety, (b) Student Doe's physical, mental, emotional, and psychological well-being, (c) the truth of the circumstances, and (d) a plan for Student Doe's successful re-entry into Severna Park High School.

82.     Defendant Board and Individual Defendants misrepresented that the photograph
was "brown" face, not gold face.

83.     Defendant Board and Individual Defendants attached the label of bias, racial bias,
and racist to Student Doe in punishing Student Doe.

84.     Defendant Board and Individual Defendants attached the label of bias, racial bias,
and racist to Student Doe in refusing to capitulate that Student Doe had no intent to cause any harm
to any student or any other person, and was, in fact, wearing gold paint on her face outside School
hours, in her private home, in a private conversation, that was shared without her consent, did not
involve any School property, and did not mention the School.

### *Repeated Requests to Revise Suspension*

85.     Student Doe and her father, Mark Heward, made repeated requests that Defendant
Board reconsider the terms of Student Doe's suspension, initiating conversations with the
Principal, Assistant Principal, and the Regional Assistant Superintendent for Glen Burnie and
Severna Park High School (as identified above, Defendant Chang, Defendant Bathras, and
Defendant Robinson).

86.     After reiterating multiple times that the color on his daughter's face was gold and
not brown or black, and that his daughter did not intend to offend anyone with her playful School
Spirit Snap, Defendant Board held firm to its decision to suspend Student Doe for school and added
a note regarding the incident to her permanent student file.

87.     Upon returning to school, Student Doe was required to participate in the Bias
Behavior Program.  This requirement by Defendant Board gave the impression to students and
others that Student Doe's behavior was biased towards a racial/minority/ethnic group and/or
intending to cause offense to a certain group of people.

88.     Defendant Board failed to recognize that their negligent and irrational decisions
would have a devastating negative impact on Student Doe's relationship with other students and
subject her to cyber and in-person bullying, which threatened (a) Student Doe's safety, and (b)
Student Doe's physical, mental, emotional, and psychological well-being.

89.     Additionally, although Defendant Board has no evidence to suggest that Student
Doe's actions constitute "intentional conduct" for biased behavior (to the contrary, they have direct
evidence that any perceived issue with the School Spirit Snap was not intentional), Defendant

Board continues to cite that language in the Handbook as its basis for implementing Student Doe's suspension from School.

### *Harm to Student Doe*

90.     Though Defendant Board, by and through its agents, servants, and/or employees, informed Student Doe and Mark Heward, "It is also not your or [Student Doe]'s determination of what is to be perceived by the students of color regarding what they find offensive," the school invalidated Student Doe's feelings regarding her intentions to paint her face gold, disagreeing when Student Doe reiterated that she did not mean offense and nothing was intentional.

91.     By Defendant Board "rubber stamping" this baseless complaint made by a student, Defendant Board labeled Student Doe a racist and further fostered the perception to students of Severna Park High School that Student Doe had engaged in racially insensitive behavior. After Defendant Board's suspension of Student Doe, Student Doe was subjected to cyberbullying, in-person bullying, and exclusion from her friend groups.

92.     Despite the emotional trauma suffered by Student Doe caused by Defendant's Board decision regarding the School Spirit Snap, Defendant Board failed to see the irony of the apparent intentions of the subsequent snaps, posts, and memes created by her fellow students toward Student Doe with actual intention to offend and harm Student Doe.  Now that Student Doe was being threatened, labeled as a racist, and routinely bullied daily, Defendant Board took no proper action to ensure the safety of Student Doe and extend her services to reintegrate her successfully into the student body.

93.     Due to Defendant Board's actions, the cyber bullying caused by this incident toward Student Doe has had a negative impact on her emotionally and psychologically, as she is now considered to be an outcast at school and has lost nearly all of friends during this process.

94.     When Student Doe sought help from Defendant Board to address her bullying, emotion damage, and reintegration into school, her school guidance counselor told Student Doe that the Board can't help her. Defendant Board specifically told Mark Heward, that the school does not have any trained personnel to deliver the counseling or peer review processes defined in the Handbook.

95.     Being a teenager in high school is stressful enough without the negative psychological effects caused by bullying which can include depression, anxiety, and long-term

damage to self-esteem. Victims of bullying, cyber or otherwise, are even at a greater risk of suicidal behavior.[2]

96.     Other than being bullied, this suspension based on a School Spirit Snap that was created during non-school hours, on non-school property, will have a negative effect on her future college application process as colleges look through previous school transcripts looking for discrepancies such as suspensions or negative behavior exhibited by the applicant.

97.     Student Doe and Mark Heward have repeatedly asked that this suspension and adverse report be taken off her record at Severna Park High School, but Defendant Board has declined to remove this incident from Student Doe's official record/transcript. Student Doe and Mark Heward have gone through the appeals process regarding this decision and taken the matter all the way up to Defendant Robinson, Regional Assistant Superintendent, but has had no success in rectifying this improper mark on Student Doe's permanent school record.

98.     This suspension based on the grounds of Student Doe's alleged intentional "bias" behavior, impairs her opportunity to go to a college of her choice, as college admission offices are sure to see this improper mark against her character as grounds for non-admission.

99.     Additionally, in June of 2021, the Supreme Court of the United States held that this type of behavior from Defendant Board, its agents, servants, and employees, including Individual Defendants, is completely improper and is a violation of a student's first amendment rights. In an 8-1 decision, these improper suspensions/actions by school boards, such as Defendant Board in this case, have been found to violate student's first amendment rights. See *Mahanoy Area Sch. Dist.* v. *B.L.*, 141 S. Ct. 2038 (2021).

100.     The facts of this instant matter are virtually identical to the facts in the *Machanoy Area Sch. Dist.* case, as the School Spirit Snap appeared outside of school hours, was sent from a location outside of school, did not identify the school in any posts, did not target a member of the school community, and was taken with a personal cellphone. *Id.* at. 2047. In fact, this case is even less severe than *Machanoy,* as this Snap in this case was sent to an audience consisting of her private circle of approximately eight (8) Snapchat friends, whereas is *Machanoy*, the Snap at issue was posted to her public story, for hundreds of people to view and directly mentioned her School. *Id.*

101.     Defendant Board was not allowed to regulate Student Doe's actions, as Defendant

---

[2] One of many articles on this issue: https://bestdaypsych.com/the-effects-of-bullying-on-mental-health/

Board was not acting *in loco parentis*, the School Spirit Snap was not uttered during school assembly on school grounds, the School Spirit Snap was not uttered during a class trip or promoted illegal drug use, and could not be perceived as "bearing the imprimatur of the school." *Id.* at. 2045.

102.    Defendant Board acted recklessly and/or with malice in this incident, as, in addition to their other actions outlined in this Complaint, their improper acts took place nearly four (4) months after the *Machanoy Area Sch. Dist.* case was published, covered by news outlets, and was well-integrated into American case law by the highest court in our Country.  Yet, even after knowing (or Defendant Board reasonably should have known) of the Supreme Court's ruling in an exactly similarly situated case such as this, Defendant Board still suspended Student Doe and refused (and are still continuing to refuse to this day) to remedy their error.

103.    Furthermore, Defendant Board was required to confirm that teachers and staff were aware of and followed all Federal, State, and Local laws, regulations, policies, and rules and met the minimum qualifications, training, and experience for working with virtual learning students so as not to interfere with privacy rights of students or parents or the Constitutional rights of students and parents. Defendant Board failed to take any of these actions.

104.    As Individual Defendants lacked experience, training, or education in dealing with guns, weapons, firearms, and School Board policy and any virtual or online learning, privacy rights of parents, and/or the Constitutional Rights of students and parents, Defendant Board was required to provide Individual Defendants with proper supervision to deal with these issues.

105.    At all relevant times, the employees of the School System and the Board, including Individual Defendants, were acting within the scope of their employment in all matters relating to Student Doe, which included, but was not limited to, instructing Student Doe and supervising Student Doe.

106.    At all relevant times, Student Doe was under the care, custody, and control of Defendant Board, its agents, servants, and employees, including Individual Defendants.

107.    Defendant Board has a *loco parentis* relationship with its students and has a special duty to protect a student from harm by following Federal, State, and Local laws as well as all Federal, State, Local, and Board regulations, policies, and rules.

108.    None of the actions and/or inactions, stated above had any educational value or provided any benefit to Student Doe, comported with best practices, or comported with training, methods, or techniques used to educate students.

109.     Individual Defendants could not have acted/failed to act in the manner described had they not been employed by Defendant Board. Individual Defendant's employment by Defendant Board allowed Individual Defendants to harm Student Doe.

110.     Prior to this Incident, Individual Defendants lacked the training, skills, knowledge, and ability to properly instruct Student Doe.

111.     Moreover, Defendant Board never inquired into Individual Defendants qualifications, training, or experience in instructing Student Doe before instructing Student Doe.

112.     Individual Defendants had no experience, qualification, training, or experience in instructing Student Doe.

113.     Defendant enacted no policy or procedure for running background checks and confirming the experience, qualification, training, and/or experience of employees instructing and supervising students, such as Student Doe.

114.     This custom and the failure to enact such a policy or procedure led directly the mistreatment Student Doe and her subsequent psychological, emotional, and mental injuries.

115.     Numerous students have suffered the same or similar injuries in the recent past as a direct and proximate result of this custom and the failure to enact such a policy or procedure.

### Count I – Negligence
### (*Plaintiffs v. Board Defendants*)

116.     Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

117.     The School System and Defendant Board owed a duty to parents and students, including Student Doe and the Plaintiffs, to provide for the safety and care of students when those students are in the custody and control of the School System and Defendant Board.  While students are in the custody and control of the School System and Defendant Board, the School System and Defendant Board have a special relationship with students and owe students the same duty that parents and guardians owe to the persons under their custody and control.

118.     Individuals Defendants owed a duty to students and parents, including Student Doe and the Plaintiffs, to provide for the safety and care of students when those students are in their custody and control. While students are in the custody and control of the Individual Defendants and their colleagues, the Individual Defendants have a special relationship with students and owe

students the same duty that parents and guardians owe to the persons under their custody and control.

119.    The Board Defendants also had a duty to use reasonable care with Student Doe and her parents.

120.    As discussed above, the School System and Defendant Board breached the duty owed to Student Doe and Plaintiffs when their employee(s), agent(s) and/or servant(s) engaged acts directed at Student Doe and failed to engage in appropriate, proper, and constructive acts with Student Doe.

121.    The School System and Defendant Board breached the duty owed to Student Doe and Plaintiffs when Defendant Board permitted Individual Defendants to come into contact with Student Doe, placed Individual Defendants in a position of trust and authority and knew or should have known Individual Defendants or others were likely to harm children or allow harm to children, including Student Doe.

122.    Individual Defendants breached the duty owed to Student Doe and Plaintiffs when engaging in inappropriate, improper, non-constructive, non-educational, and unsafe acts directed at Student Doe or failing to engage in appropriate, proper, constructive, educational and safe acts with Student Doe.

123.    That at all time relevant herein, Defendant Board, through its agents, servants, and/or employees, had duty to perform a reasonable investigation into any allegations against Student Doe; properly follow and interpret Defendant Board's Handbook; act with reasonable care and handle the aforementioned incident as someone using reasonable care would do; employee properly trained staff to deal with situations such as Student Doe's; properly train existing staff to handle and implement solutions to situations such as Student Doe's; protect Student Doe from backlash surrounding Defendant's Board's decision; implement a plan and/or offer resources for Student Doe to ensure her successful reintegration into the student body; take into account the repercussions of suspending a 13-year old child for painting her face gold and labeling her as a racially insensitive individual; see that all students are treated equally; not be unduly pressured into making improper decisions and suspensions based on a complainant's race/ethnicity; ensure that unsafe and dangerous conduct of its students is addressed in a timely manner; ensure that any cyberbullying and in-person bullying of Student Doe by its students is addressed in a timely manner;  to properly inform students of the facts surrounding the School Spirit Snap incident; not

"rubber stamp" complaints without investigating the facts behind the complaints with reasonable care and/or diligence; provide a safe environment for all its students at Severna Park High School, specifically, to Student Doe; protect Student Doe from harm while at Severna Park High School; to treat Student Doe in a manner which didn't violate her constitutional rights; to treat her consistent will all federal and state laws; and otherwise act in a non-negligent manner.

124.    That at all time relevant herein, Defendant Board, through its agents, servants, and/or employees, breached their aforementioned duties by failing to perform a reasonable investigation into any allegations against Student Doe; failing to properly follow and interpret Defendant Board's Student Handbook; failing to act with reasonable care and handle the aforementioned incident as someone using reasonable care would do; failing to employee properly trained staff to deal with situations such as Student Doe's; failing to properly train existing staff to handle and implement solutions to situations such as Student Doe's; failing to protect Student Doe from backlash surrounding Defendant's Board's decision; failing to implement a plan and/or offer resources for Student Doe to ensure her successful reintegration into the student body; failing to take into account the repercussions of suspending a 13-year old child for painting her face gold and labeling her as a racially insensitive individual; failing to see that all students are treated equally; failing to not be unduly pressured into making improper decisions and suspensions based on a complainant's race/ethnicity; failing to ensure that unsafe and dangerous conduct of its students is addressed in a timely manner; failing to ensure that any cyberbullying and in-person bullying of Student Doe by its students is addressed in a timely manner;  failing to properly inform students of the facts surrounding the School Spirit Snap incident; failing to not "rubber stamp" complaints without investigating the facts behind the complaints with reasonable care and/or diligence; failing to provide a safe environment for all its students at Severna Park High School, specifically, to Student Doe; failing to protect Student Doe from harm while at Severna Park High School; failing to treat Student Doe in a manner which didn't violate her constitutional rights; failing to treat her consistent will all federal and state laws; and failing to otherwise act in a non-negligent manner.

125.    That as a direct and proximate result of the negligence of Defendant Board, Plaintiff has suffered, and will continue to suffer in the future, great suffering, mental anguish, reputational damage, out-of-pocket losses; past and future medical expenses, personal humiliation; psychological injuries; lost and/or diminished earnings (in part, because now she, more likely than

23

not, will not be admitted into a reputable college while suspension remains in her file), and other non-economic damages recoverable under the law.

126.    That at no time relevant hereto was the Plaintiff contributorily negligent nor did Plaintiff assume the risk.

127.    The Board Defendants are responsible for the actions of their employee(s)/agent(s).

128.    As a direct and proximate result of these acts/actions/inactions/omissions, by Defendant(s), individually and/or by and through its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

### COUNT II – Invasion of Privacy (Unreasonable Publicity)
#### (*Plaintiffs v. Board Defendants*)

129.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

130.    Board Defendants intentionally publicized Plaintiffs private facts.

131.    Plaintiffs' private facts are not and were not valid concern to the public.

132.    Student Doe did not consent, and because of Student Doe's age and mental condition, could not consent to Defendants' actions.

133.    Student Doe's parents did not consent to Defendants' actions.

134.    Defendants' publication would be highly offensive to a reasonable person.

135.    The actions of Board Defendants were performed intentionally and with malice.

136.    As a direct and proximate result of these acts/actions/inactions/omissions, by Board Defendant(s), individually and/or by and through its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

### COUNT III – Invasion of Privacy (False Light)
#### (*Plaintiffs v. Board Defendants*)

137.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

138.    Board Defendants intentionally gave publicity to a matter concerning Plaintiffs that places Plaintiffs before the public in a false light.

139.    The false light in which Plaintiffs were placed would be highly offensive to a

reasonable person.

140. Board Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiffs would be placed.

141. Student Doe did not consent, and because of Student Doe's age and mental condition, could not consent to Defendants' actions.

142. Student Doe's parents did not consent to Board Defendants' actions.

143. The actions of Board Defendants were performed intentionally and with malice.

144. As a direct and proximate result of these acts/actions/inactions/omissions, by Board Defendant(s), individually and/or by and through its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

### COUNT IV – Defamation
### (*Plaintiffs v. Board Defendants*)

145. Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

146. Board Defendants made defamatory statement(s) to a third person.

147. Those defamatory statements were false.

148. Board Defendants were legally at fault in making the statement.

149. The actions of Board Defendants were performed intentionally and with malice.

150. As a direct and proximate result of these acts/actions/inactions/omissions, by Board Defendant(s), individually and/or by and through its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

### Count V – Breach of Fiduciary Duty
### (*Plaintiffs v. Board Defendants*)

151. Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

152. A fiduciary relationship existed between Plaintiff(s) and Board Defendant(s).

153. Board Defendant(s) breached the duty owed by the fiduciary (Board Defendant(s)) to the beneficiary (Plaintiff(s)).

154. As a direct and proximate result of these acts/actions/inactions/omissions, by Board

Defendant(s), individually and/or by and through its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

**COUNT VI – Violation of Rights Secured Under**
**Article 24 of the Maryland Declaration of Rights**
**(*Plaintiffs v. Board Defendants*)**

155.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

156.    Board Defendant(s), individually and/or by and through its/their agents, servants, and employees (a)(i) acted or (ii) engaged in activities or (b) failed to act in violation of Plaintiff(s)'s rights secured and protected under Article 24 of the State of Maryland Declaration of Rights and the Constitution of Maryland.

157.    Article 24 states: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

158.    The acts and omissions of Defendant(s), its/their agents, servants, and employees are detailed within this Complaint.

159.    Article 24 of the Maryland Declaration of Rights guarantees public school students the right to (i) bodily integrity, (ii) personal security, (iii) autonomy over body; (iv) self-determination over body; (v) a protected property interest in their freedom, (vi) the ability to exercise free will and dominion over their person, (vii) be free from unlawful and unwelcome battery by a government actor, (ix) be free from a deprivation of liberty without due process of law; (x) equal protection of the laws; (xi) freedom from the summary punishment without probable cause, without due process, without judgment of Plaintiff(s)'s peers, and in violation of the Law of the Land; (xii) freedom from seizure of freehold, liberty, and/or privileges without probable cause, without due process, without judgment of Plaintiff(s)'s peers, and in violation of the Law of the Land; (xiii) freedom from the deprivation of life, liberty, or property without probable cause, without due process, without judgment of Plaintiff(s)'s peers, and in violation of the Law of the Land; (xiv) freedom from the destruction of his freehold, life, liberty, or property without probable cause, without due process, without judgment of Plaintiff(s)'s peers, and in violation of the Law of the Land; and (xv) freedom from the abuse of power without probable cause, without due process, without judgment of Plaintiff(s)'s peers, and in violation of the Law of the Land;

26

160.     As detailed above, Board Defendant(s) action(s) deprived Plaintiff(s) of Plaintiff(s)' rights under Article 24 of the Maryland Declaration of Rights.

161.     Board Defendants also violated Plaintiff(s)' rights by providing less process than was due under Maryland law, depriving Plaintiff(s) of numerous protected rights and property interests, acting in an objectively unreasonable manner, and providing unequal protection under the law.

162.     Plaintiff(s) has/have a protected property interest in the rights, liberties, and privileges described above and Plaintiff(s) was/were deprived of numerous protected property interests by the Board Defendants, their agents, and their employees when Board Defendant(s) investigated, Plaintiff(s) as described above without probable cause, legal excuse, or justification.

163.     Plaintiff(s) was/were afforded less process than was due under law by the Board Defendant(s), its/their agents, servants, and employees in depriving them of the rights in question.

164.     The individual Defendant(s), its/their agents, servants, and employees, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

165.     Plaintiff(s) further allege(s) that all of Plaintiff(s)'s injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of the Board Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff(s), either directly or indirectly.

166.     Defendant Board had notice of the actions/inactions as described above.

167.     Defendant Board adopted a policy, pattern, and/or practice of inaction that facilitated the harm to Plaintiff(s).

168.     Defendant Board, by and through its agents, servants, and employees, tacitly approved of the unconstitutional conduct and displayed deliberate indifference reflecting Defendant Board's failure to act amounted to an official policy of inaction. Specifically, Defendant Board did nothing to stop the action/inaction once having notice of it. In addition, Defendant Board's hiring, failing to train, failing to supervise, and retaining Individual Defendant(s) resulted in a deprivation of Plaintiff(s)' right under the Maryland Declaration of Rights and Constitution.

169.     Furthermore, Defendant Board's policy, pattern, and/or practice of inaction was the moving force behind the actual constitutional deprivation.

170.     As a direct and proximate result of Board Defendant(s)' actions/inaction,

27

Plaintiff(s) suffered personal injuries.

171.     At all times relevant, Board Defendant(s) acted with ill-will and malice.

172.     At all times relevant, Individual Defendant(s) was/were working as an agent, employee, or servant of Defendant Board and/or under the color of law.

173.     Defendant Board is vicariously liable for Individual Defendant(s)'s violations of Plaintiff(s)'s rights under Article 24 of the Maryland Declaration of rights.

174.     As a direct and proximate result of these acts/actions/inactions/omissions, by Board Defendant(s), individually and/or by and through its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

### COUNT VII – Violation of Rights Secured Under Article 26 of the Maryland Declaration of Rights (*Plaintiffs v. Board Defendants*)

175.     Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

176.     Board Defendant(s), its/their agents, servants, and employees (a)(i) acted or (ii) engaged in activities or (b) failed to act in violation of Plaintiff(s)'s rights secured and protected under Article 26 of the State of Maryland Declaration of Rights and the Constitution of Maryland.

177.     Article 26 states: "That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

178.     Article 26 of the Maryland Declaration of Rights guarantees the right to be free from unlawful search or seizure, loss of liberty, and the right to bodily integrity.

179.     As detailed above, Board Defendant(s) actions deprived Student Doe of her rights under Article 26 of the Maryland Declaration of Rights, including, but not limited to freedom from unlawful search or seizure, loss of liberty, and the right to bodily integrity.

180.     Defendant Board had notice of the actions/inactions as described above.

181.     The Individual Defendant(s), its/their agents, servants, and employees, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

182.     Plaintiff(s) further allege(s) that all of Plaintiff(s)'s injuries, losses, and damages -

28

past, present and prospective - were caused solely by the conduct, actions, and inactions of the Board Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff(s), either directly or indirectly.

183.    Defendant Board adopted a policy, pattern, and/or practice of inaction that facilitated the harm to Plaintiff(s).

184.    Defendant Board tacitly approved of the unconstitutional conduct and displayed deliberate indifference reflecting Defendant Board's failure to act amounted to an official policy of inaction. Specifically, Defendant Board did nothing to stop the action/inaction once having notice of it. In addition, Defendant Board's hiring, failing to train, failing to supervise, and retaining Individual Defendant(s) resulted in a deprivation of Plaintiff(s)' right under the Maryland Declaration of Rights and Constitution.

185.    Furthermore, Defendant Board's policy, pattern, and/or practice of inaction was the moving force behind the actual constitutional deprivation.

186.    As a direct and proximate result of Board Defendant(s)' actions/inaction, Plaintiff(s) suffered personal injuries.

187.    At all times relevant, Board Defendant(s) acted with ill-will and malice.

188.    At all times relevant, Individual Defendant(s) was/were working as an agent, employee, or servant of Defendant Board and/or under the color of law.

189.    Defendant Board is vicariously liable for Individual Defendant(s)'s violations of Plaintiff(s)'s rights under Article 26 of the Maryland Declaration of rights.

190.    As a direct and proximate result of these acts/actions/inactions/omissions, by Board Defendant(s), individually and/or by and through its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

### Count VIII – Violation of Rights Secured Under
### Article 40 of the Maryland Declaration of Rights
### (*Plaintiffs v. Board Defendants*)

191.    Plaintiff(s) incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

192.    Board Defendant(s), its/their agents, servants, and employees (a)(i) acted or (ii) engaged in activities or (b) failed to act in violation of Plaintiff(s)'s rights secured and protected under Article 40 of the State of Maryland Declaration of Rights and the Constitution of Maryland.

193.    Article 40 states: "That the liberty of the press ought to be inviolably preserved; *that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects*, being responsible for the abuse of that privilege."

194.    Defendant Board's suspension of Student Doe for her out-of-school School Spirit Snap violates the First Amendment to the U.S. Constitution, as applied to the states through the Fourteenth Amendment.  Defendant Board acted under the color of state law and deprived Student Doe of a federal constitutional right.

195.    Defendant Board acted with recklessness, malice and/or deceit in the instant action.

196.    That as a direct and proximate result of the Defendant Board's violation, by and through its agents, servants and/or employees, Plaintiff has suffered, and will continue to suffer in the future, great suffering, mental anguish, reputational damage, out-of-pocket losses; past and future medical expenses; personal humiliation; psychological injuries; lost and/or diminished earnings (in part, because now she, more likely than not, will not be admitted into a reputable college while suspension remains in her file), and other economic and non-economic damages recoverable under the law.

197.    The Individual Defendant(s), its/their agents, servants, and employees, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

198.    Plaintiff(s) further allege(s) that all of Plaintiff(s)'s injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of Board Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff(s), either directly or indirectly.

199.    Board Defendant(s), by and through its/their agents, servants, and/or employees adopted a policy, pattern, and/or practice of action and/or inaction that facilitated the violation of Plaintiff(s)' rights.

200.    Board Defendant(s), by and through its/their agents, servants, and/or employees tacitly approved and displayed deliberate indifference towards this unconstitutional conduct reflecting what amounted to an official policy of inaction.

201.    As a direct and proximate result of these acts/actions/inactions/omissions, by Board

30

Defendant(s), individually and/or by and through its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

### COUNT IX – Violation of Rights Secured Under 42 U.S.C.A. § 1983 And the First and Fourteenth Amendments to the United States Constitution (*Plaintiffs v. Board Defendants*)

202.    Plaintiff(s) incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

203.    Board Defendant(s), by and through its/their agents, servants, and/or employees (a)(i) acted or (ii) engaged in activities or (b) failed to act in violation of Plaintiff(s)'s rights secured and protected under 42 U.S.C.A. §1983 and, including, but not limited to, the Fourth and Fourteenth Amendment of the United States Constitution as well as the State of Maryland Declaration of Rights and the Constitution of the State of Maryland, the Laws of the State of Maryland, the Regulations of the State of Maryland, and the Code of Baltimore County, Maryland.

204.    42 U.S.C.A. §1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

205.    The First Amendment of the Constitution states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or ***abridging the freedom of speech***, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

206.    The Fourteenth Amendment of the Constitution incorporates the Fourth Amendment of the Constitution onto Defendants.

31

207.    Furthermore, the Fourteenth Amendment of the Constitution States: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. ***No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.***"

208.    This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to Plaintiffs by the following non-exhaustive sources: the United States Constitution, Federal law, the State of Maryland Declaration of Rights, the Constitution of the State of Maryland, the Laws of the State of Maryland, the Regulations of the State of Maryland, and any local law or ordinance.   The deprivation was of a clearly established right.

209.    Defendant Board's suspension of Student Doe for her out-of-school School Spirit Snap violates the First Amendment to the U.S. Constitution, as applied to the states through the Fourteenth Amendment.  Defendant Board acted under the color of state law and deprived Student Doe of a federal constitutional right.

210.    Defendant Board acted with recklessness, malice and/or deceit in the instant action.

211.    That as a direct and proximate result of the Defendant Board's violation, by and through its/their agents, servants, and/or employees, Plaintiff has suffered, and will continue to suffer in the future, great suffering, mental anguish, reputational damage, out-of-pocket losses; past and future medical expenses; personal humiliation; psychological injuries; lost and/or diminished earnings (in part, because now she, more likely than not, will not be admitted into a reputable college while suspension remains in her file), and other economic and non-economic damages recoverable under the law.

212.    Plaintiff(s) has/have protected rights, liberties, and privileges described above and Plaintiff(s) was/were deprived of numerous protected rights, liberties, and privileges by the Board Defendants, by and through its/their agents, servants, and/or employees.

213.    The Individual Defendant(s), by and through its/their agents, servants, and/or employees, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

32

214.    Plaintiff(s) further allege(s) that all of Plaintiff(s)'s injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of the Board Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff(s), either directly or indirectly.

215.    Board Defendant(s), by and through its/their agents, servants, and/or employees adopted a policy, pattern, and/or practice of action and/or inaction that facilitated the violation of Plaintiff(s) rights.

216.    Board Defendant(s), by and through its/their agents, servants, and/or employees tacitly approved and displayed deliberate indifference towards this unconstitutional conduct reflecting what amounted to an official policy of inaction.

217.    As a direct and proximate result of these acts/actions/inactions/omissions, by Board Defendant(s), individually and/or by and through its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

### COUNT X – Violation of Rights Secured Under 42 U.S.C.A. § 1983 and the Fourteenth Amendment to the United States Constitution (*Plaintiffs v. Board Defendants*)

218.    Plaintiff(s) incorporate by reference and re-allege the allegations contained in the preceding paragraphs, as if fully set forth herein.

219.    Board Defendant(s), by and through its/their agents, servants, and/or employees (a)(i) acted or (ii) engaged in activities or (b) failed to act in violation of Plaintiff(s)'s rights secured and protected under 42 U.S.C.A. §1983 and, including, but not limited to, the Fourteenth Amendment of the United States Constitution as well as the State of Maryland Declaration of Rights and the Constitution of the State of Maryland, the Laws of the State of Maryland, the Regulations of the State of Maryland, and the applicable County Charter and/or Code.

220.    42 U.S.C.A. §1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other

proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

221.    Furthermore, the Fourteenth Amendment of the Constitution States: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

222.    This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to Plaintiffs by the following non-exhaustive sources: the United States Constitution, Federal law, the State of Maryland Declaration of Rights, the Constitution of the State of Maryland, the Laws of the State of Maryland, the Regulations of the State of Maryland, and any local law or ordinance.  The deprivation was of a clearly established right.

223.    Plaintiff(s) has/have a protected property interest in the rights, liberties, and privileges described above and Plaintiff(s) was/were deprived of numerous protected property interests by Board Defendants, by and through its/their agents, servants, and/or employees when Defendant(s) violated Plaintiff(s) rights' by depriving Plaintiffs of life, liberty, or property, without due process of law.

224.    Plaintiff(s) was/were afforded less process than was due under law by Board Defendant(s), its/their agents, servants, and employees in depriving them of the rights in question.

225.    The Board Defendant(s), its/their agents, servants, and employees, at all times relevant hereto, acted in a manner that was deliberately indifferent to the rights of Plaintiff(s), with an intent to harm, and/or in a way that shocks the conscience, deliberate, brutal, inspired by sadism, and inhumanely disproportionate to any need – in fact, no need is present in this case.

226.    Plaintiff(s) was/were not afforded equal protection that was due under law by Board Defendant(s), its/their agents, servants, and employees in depriving them of the rights in question.

227.    Plaintiff(s) right to privacy was violated by the intrusion into their home and from

34

the disclosure of false information to the public.

228.    The Board Defendant(s), its/their agents, servants, and employees, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

229.    Plaintiff(s) further allege(s) that all of Plaintiff(s)'s injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of Board Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff(s), either directly or indirectly.

230.    Board Defendant(s), by and through its/their agents, servants, and/or employees adopted a policy, pattern, and/or practice of action and/or inaction that facilitated the violation of Plaintiff(s) rights.

231.    Board Defendant(s), by and through its/their agents, servants, and/or employees tacitly approved and displayed deliberate indifference towards this unconstitutional conduct reflecting what amounted to an official policy of inaction.

232.    As a direct and proximate result of these acts/actions/inactions/omissions, by Board Defendant(s), individually and/or by and through its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.


WHEREFORE, Plaintiff(s) demand(s) judgment against all Defendant(s), jointly and severally:

(a)    In an amount of compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00);

(b)    In an amount of punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00);

(c)    Declare that Defendant Board's disciplinary action against Student Doe for her out-of-school School Spirit Snap violated Student Doe's right under the First and Fourteenth Amendments to the U.S. Constitution and Article 24, 26, and 40 of the Maryland Declaration of Rights;

(d)    Enjoin Defendant Board from any continuing punishment or sanction against Student Doe on account of her constitutionally protected speech, including

(1) mandating that Defendant Board expunge from Student Doe's records

all references to the incident in question;

(2) printing/publishing an apology and clarification to the students of the school to clear Student Doe's name and family's name of any wrongdoing;

(3) ensuring that all references to the incident in question are not transferred to, or are removed from, any other schools to which Student Doe may transfer; and

(4) other injunctive relief to be requested as discovery develops;

(e) reasonable attorneys fees;

(f) pre-judgment and post-judgment interest;

(g) costs; and

(h) such other and further relief as is just and necessary.

Respectfully Submitted,

**LEDYARD LAW LLC**

By: */s/ David C.M. Ledyard*
      David C.M. Ledyard
      AIS No.: 0912160165
      1 North Charles Street, Suite 1215
      Baltimore, Maryland 21201
      Phone:  (410) 807-8077
      Fax:     (410) 807-8076
      david@ledyardlaw.com

The Valente Law Group

By: */s/ Cole J. Sullivan*
      Cole J. Sullivan
      AIS No.: 1905060001
      2200 Defense Highway, Suite 304
      Crofton, Maryland 21114
      Phone:  (410) 451-1777
      Fax:     (443) 292-4614
      csullivan@jpvlawgroup.com

*Counsel for Plaintiff(s)*

## DEMAND FOR JURY TRIAL

Plaintiffs by and through undersigned counsel, respectfully requests a jury trial on all of the above claims.

*/s/ David C.M. Ledyard*
David C.M. Ledyard

*/s/ Cole J. Sullivan*
Cole J. Sullivan

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, this 27th Day of December 2022, I filed with the Court and served a copy of Plaintiffs' Amended Complaint *via* either (a) first-class U.S. Mail, postage prepaid, or (b) electronic service (through the MDEC System), on:

Tamal A. Banton, Esquire
ANNE ARUNDEL COUNTY OFFICE OF LAW
2660 Riva Road, 4th Floor
Annapolis, Maryland 21401
tbanton@aacounty.org

*Counsel for Defendants Board of Education of Anne Arundel County, Patrick Bathras, Paige Chang, and Janine Robinson*

*/s/ David C.M. Ledyard*
David C.M. Ledyard